IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HARRIET S., <br><br>                    Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL <br><br> Case No. 2:17-CV-152 TS-PMW <br><br> District Judge Ted Stewart |

Plaintiff filed her Complaint in this matter on March 13, 2017. This case was subsequently referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge issued a Report and Recommendation on August 30, 2018, recommending the decision of the Commissioner be affirmed. Plaintiff has objected to the Report and Recommendation and Defendant has responded. This matter is before the Court for consideration of the Report and Recommendation. For the reasons discussed below, the Court sustains in part and overrules in part Plaintiff's Objection, adopts the Report and Recommendation in part, and remands this matter for further proceedings.

I. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b), a party has 14 days after being served with a copy of the Report and Recommendation to file an objection. Plaintiff has filed an objection to the Magistrate Judge's Report and Recommendation. As Plaintiff has objected, the Court reviews the Report and Recommendation de novo.[1]

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

In order to conduct a de novo review a court "should make an independent determination of the issues . . . ; [it] 'is not to give any special weight to the [prior] determination' . . . ." "The district judge is free to follow [a magistrate judge's recommendation] or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew."[2]

## II. BACKGROUND

On August 20, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on November 1, 2012. The claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on January 6, 2016.

The ALJ issued a decision on March 30, 2016, finding that Plaintiff was not disabled. The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 1, 2012, the alleged onset date. At step two, the ALJ found that Plaintiff had a number of medically determinable impairments, but none of them were severe. As a result, the ALJ found that Plaintiff was not disabled.

The Appeals Council denied Plaintiff's request for review on February 3, 2017, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[3]

## III. DISCUSSION

Plaintiff first asserts that the ALJ erred in his step two analysis. Plaintiff argues that the ALJ erred in finding that her diarrhea, neuropathy, and cognitive impairments were not severe.

---

[2] *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. First City Nat'l Bank*, 386 U.S. 361, 368, (1967); *Mathews v. Weber*, 423 U.S. 261, 271 (1976)).

[3] 20 C.F.R. § 422.210(a).

2

Plaintiff next argues that the ALJ erred in his treatment of medical opinion evidence. The Court will discuss each argument in turn.

A.  STEP TWO

At step two of the sequential evaluation, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. Plaintiff argues that the ALJ erred in failing to find Plaintiff's diarrhea, neuropathy, and cognitive impairments to be severe impairments.[4]

An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."[5] A claimant must make only a de minimis showing for her claim to advance beyond step two of the analysis.[6] However, the "mere presence of a condition is not sufficient."[7] Thus, "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities . . . the impairments do not prevent the claimant from engaging in substantial gainful activity."[8] "If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [s]he is not eligible for disability benefits."[9]

---

[4] In her Opening Brief before the Magistrate Judge, Plaintiff also argued that the ALJ erred in failing to find her visual impairment to be severe. The Magistrate Judge rejected this argument and Plaintiff does not address this issue in her Objection, thereby waiving it. *Morales–Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

[5] 20 C.F.R. §§ 404.1520(c), 416.920(c).

[6] *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004).

[7] *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008).

[8] *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[9] *Id.*

*1. Diarrhea and Incontinence*

Plaintiff complained to her doctor of diarrhea and incontinence beginning on July 25, 2013.[10] Plaintiff stated that she had loose stools up to three times per day. She stated that she had to go rapidly and had some incontinence.

On September 16, 2013, Plaintiff again complained of ongoing diarrhea, dating back to the previous November.[11] Plaintiff stated that she went to the bathroom one to six times per day, always with loose stool. She also stated that about four days per week she would have loose stool more than three times per day. She also had some cramping and pain. Plaintiff informed her doctor that her diarrhea made it difficult for her to obtain employment because she had to run to the bathroom often and had to get there quickly. Plaintiff's primary care physician, Dr. Johnson, recommended a colonoscopy and prescribed Imodium. A colonoscopy was later preformed with benign results.

Plaintiff again complained of diarrhea on January 22, 2014.[12] Plaintiff explained that it comes fast and emergently and that she had accidents, including accidents at work. She also stated that she suffered from cramping and pain. Dr. Johnson's notes stated that Plaintiff should consider cholestyramine, but it does not appear that it was ever prescribed.

On June 26, 2014, Plaintiff complained of both fecal and urinary incontinence.[13] Plaintiff stated that she had accidents involving both, though she had rare issues during the day so long as she stayed close to a bathroom. In his treatment notes, Dr. Johnson described this as a "big

---

[10] R. at 387.
[11] *Id.* at 456.
[12] *Id.* at 472.
[13] *Id.* at 562.

issue."[14] Dr. Johnson noted that Plaintiff's incontinence was a "daily issue" affecting Plaintiff's "ability to work and leave the home and live life."[15] Dr. Johnson noted that Plaintiff was unable to afford surgery and was required to stay close to a bathroom.[16]

At the hearing before the ALJ, Plaintiff testified that she had ongoing problems with diarrhea and incontinence, needing to go to the bathroom up to eight times a day. Plaintiff further stated that she wears adult protective undergarments due to her incontinence.

As set forth above, the ALJ found that Plaintiff's incontinence was a medically determinable impairment, but was not severe. In his decision, the ALJ stated that Plaintiff complained of diarrhea and incontinence on three occasions: July 25, 2013, September 16, 2013, and January 22, 2014. The ALJ stated that Plaintiff "did not complain about having diarrhea or incontinence to her treating providers after this."[17] The ALJ also noted that Plaintiff's colonoscopy was benign and that she was not prescribed any anti-diarrheal medication after September 16, 2013.[18] Nowhere in his analysis does the ALJ reference or discuss Dr. Johnson's treatment notes from June 26, 2014.

The ALJ is not required to discuss in detail each piece of evidence, but the record must demonstrate that the ALJ considered all of the evidence.[19] "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he

---

[14] *Id.* at 563.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 23.

[18] *Id.* at 26.

[19]*Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

chooses not to rely upon, as well as significantly probative evidence he rejects."[20] The ALJ "may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'"[21] This is important at step two of the sequential analysis, as that step "requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities."[22]

Here, the ALJ incorrectly noted that Plaintiff had only complained of diarrhea three times and had not complained about having diarrhea or incontinence after January 2014.[23] As is detailed above, Plaintiff's complaints about diarrhea and incontinence continued after January 2014, continuing up to and including the administrative hearing. Of particular relevance here are the treatment notes from Dr. Johnson from June 26, 2014. In those notes, Dr. Johnson detailed how Plaintiff's incontinence was a daily issue that affected Plaintiff's ability to work. This is significantly probative evidence that the ALJ appears to have overlooked. This evidence also undermines one of the primary justifications for the ALJ's decision that Plaintiff's incontinence was non-severe. The ALJ makes much of the fact that Plaintiff only complained of diarrhea and incontinence on three occasions and that those complaints stopped after January 2014. The treatment notes from June 26, 2014, demonstrate that this was incorrect. Plaintiff's incontinence

---

[20] *Id.* at 1010.

[21] *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton*, 79 F.3d at 1010).

[22] Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *4 (Jan. 1, 1985).

[23] R. at 26; *Id.* at 27.

continued after January 2014 and presented significant problems in her life, including interfering with her ability to work.

The ALJ also found Plaintiff's incontinence to be non-severe because Plaintiff was not prescribed other treatment after Dr. Johnson prescribed Imodium. However, in his June 26 treatment notes, Dr. Johnson noted Plaintiff could not afford surgery, which may provide an explanation as to why no further treatment was prescribed. But, as stated, the ALJ did not address this.

The ALJ also relied on the state agency physicians who opined that Plaintiff's physical impairments were non-severe. However, those opinions were rendered on November 11, 2013, and February 12, 2014, respectively.[24] As a result, the state agency physicians did not have the benefit of the medical records created thereafter, including the June 26, 2014 treatment notes that detailed the severity of Plaintiff's incontinence and its impact on Plaintiff's ability to work.

Based upon the above, remand is required to allow the Commissioner to weigh all of the medical evidence relevant to determining whether Plaintiff's incontinence is a severe impairment, including the June 26, 2014 treatment notes.

2. *Neuropathy*

Plaintiff argues that the ALJ erred in finding her neuropathy non-severe. The ALJ stated that the medical evidence did not establish that Plaintiff had peripheral neuropathy in her hands or feet and that Plaintiff had not complained of numbness, tingling, pain or other neuropathic symptoms.[25] The ALJ was correct that there was no evidence of neuropathy in Plaintiff's hands.

---

[24] *Id.* at 76–81, 86–91.
[25] *Id.* at 26.

However, there are a number of references in the medical record demonstrating that Plaintiff complained of neuropathic symptoms in her feet,[26] which were supported by exam.[27] The ALJ does not appear to have considered this evidence, requiring remand for the same reasons stated above.

The Commissioner argues that remand is not required because the evidence does not show that Plaintiff experienced any significant limitations as a result of neuropathy. The Commissioner points to a number of normal foot examinations during the relevant period and to the fact that Plaintiff often did not report numbness or tingling in her feet. The Commissioner also notes that Plaintiff was able to exercise throughout the relevant period and that her treating physician opinioned that she could stand for two hours at a time and four hours total, and walk for 15 minutes at a time and two hours total.

While the Commissioner has presented good arguments in support of the ALJ's decision, the bulk of those arguments are post-hoc rationalizations not present in the ALJ's decision.[28] The ALJ's decision on this issue appears to be largely based on his mistaken belief that Plaintiff had not complained of neuropathic symptoms and had not been diagnosed with neuropathy. Of the arguments made by the Commissioner, only the normal foot examinations are presented by the ALJ as a basis to discount Plaintiff's complaints.[29] Further, the Court cannot conclude that

---

[26] *Id.* 318, 349, 377, 407, 424, 438, 473, 494, 511, 526.

[27] *Id.* at 389, 446.

[28] *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (rejecting "post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself").

[29] R. at 27.

this error was harmless because it cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the [issue] in any other way."[30]

### 3. Cognitive Impairments

Plaintiff next argues that the ALJ erred in his determination that Plaintiff's cognitive impairments were non-severe. Plaintiff's claim relating to cognitive impairments is based on the Wechsler Adult Intelligence Scale ("WAIS") examination completed by Lori Kotter, Psy.D. The ALJ afforded partial weight to Dr. Kotter's opinion. The ALJ found that the WAIS examination supported Dr. Kotter's opinion that Plaintiff did not have borderline intellectual functioning or intellectual disability. However, the ALJ found that the evidence did not support Dr. Kotter's opinion that Plaintiff would have difficulty performing visual-spatial tasks and tasks that require quick and efficient processing.

Plaintiff argues that the ALJ's analysis is internally inconsistent, that the ALJ substituted his judgment for that of Dr. Kotter's, and that his evaluation was flawed. All of these arguments collapse into the determination of whether the ALJ's evaluation of Dr. Kotter's opinions was proper, which is discussed below.

### B. MEDICAL OPINION EVIDENCE

Plaintiff next challenges the ALJ's evaluation of the medical opinion evidence. The ALJ, in reviewing the opinions of treating sources, must engage in a sequential analysis.[31] First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and

---

[30] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

[31] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

9

laboratory techniques.[32] If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in the record.[33] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[34]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[35] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[36]

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[37] If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[38] These same factors are considered in evaluating opinions from other sources.[39]

---

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)); *see also* 20 C.F.R. 404.1527(c).

[37] *Watkins*, 350 F.3d at 1300.

[38] *Id.*

[39] SSR 06–03p, 2006 WL 2263437 (Aug. 9, 2006).

### 1. Dr. Johnson

Plaintiff's primary care physician, Dr. Johnson, completed a form entitled Physician's Assessment of Physical Capacities.[40] On that form, Dr. Johnson opined that Plaintiff could sit for two hours at a time and six hours total, could stand for two hours at a time and four hours total, could walk for 15 minutes at a time and two hours total, could occasionally lift up to 10 pounds, rarely lift 20 pounds, and never lift 50 pounds. Dr. Johnson also opined that Plaintiff could user her hands, fingers, and arms to do simple grasping, use push and pull arm controls, and engage in fine manipulation. Finally, Dr. Johnson stated that Plaintiff had no other physical limitations. The same day that he filled out this form, Dr. Johnson stated in his treatment notes that Plaintiff was "able to function quite well."[41]

The ALJ found that Dr. Johnson's annotation—that Plaintiff was able to function quite well—was entitled to great weight because his treatment records did not document that Plaintiff had functional limitations due to her impairments. However, the ALJ found that Dr. Johnson's opinions contained in the Physician's Assessment of Physical Capacities were only entitled to partial weight. In particular, the ALJ found that Dr. Johnson's opined exertional limitations lacked objective support in the record and were inconsistent with the observation that Plaintiff could function quite well.

Plaintiff disputes the ALJ's conclusion that the record failed to demonstrate that Plaintiff had functional limitations. Plaintiff points to evidence in the record demonstrating shortness of breath and dyspnea. By pointing to this evidence, however, Plaintiff is asking the Court to

---

[40] R. at 492.
[41] *Id.* at 601.

11

reweigh the evidence and substitute its judgment for that of the ALJ, which it cannot do.[42] "Instead, we review the ALJ's decision only to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record."[43]

Here, the ALJ followed the correct legal standard and provided good reasons, supported by the evidence, for the weight he gave to Dr. Johnson's opinions. Therefore, the Court must reject Plaintiff's argument that the ALJ's analysis of Dr. Johnson's opinions was erroneous. However, upon remand, the ALJ may want to reconsider his analysis of Dr. Johnson's opinions in light of the above.

   *2. Dr. Kotter*

Plaintiff next takes issue with the ALJ's treatment of Dr. Kotter's opinions. As set forth above, the ALJ afforded partial weight to Dr. Kotter's opinion. The ALJ found that the WAIS examination supported her conclusion that Plaintiff did not have borderline intellectual functioning or intellectual disability. However, the ALJ found that the evidence did not support Dr. Kotter's opinion that Plaintiff would have more difficulty performing visual-spatial tasks and tasks that require quick and efficient processing.

Plaintiff argues that the ALJ improperly substituted his judgment for that of Dr. Kotter and impermissibly selected from her opinions those portions that support a finding of non-disability. Plaintiff is correct that the ALJ cannot substitute his judgment for that of Dr. Kotter[44] and "is not entitled to pick and choose from a medical opinion, using only those parts that are

---

[42] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).
[43] *Id.*
[44] *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996).

12

favorable to a finding of nondisability."[45]  But that is not what occurred here.  Using the proper framework, the ALJ concluded that certain of Dr. Kotter's opinions were not supported by the evidence and, thus, were not entitled to controlling weight.  As to those opinions, the ALJ provided good reasons, supported by the evidence, for giving them little weight.  Therefore, the ALJ's analysis of Dr. Kotter's opinion was not flawed, as he properly explained why he provided greater weight to some opinions than to others.[46]

### 3. *State Agency Physicians*

Finally, Plaintiff challenges the ALJ's evaluation of the state agency physicians, whose opinions he gave great weight.  Plaintiff argues that the ALJ failed to evaluate these opinions using the proper framework and that the opinions should not have been given great weight because they were based on a review of an incomplete record.  Because remand is necessary for the reasons discussed above, the ALJ should reconsider the weight he assigned to the state agency physicians in light of Plaintiff's subsequent medical developments.  The ALJ may also consider asking for updated opinions from state agency physicians who will consider all the medical evidence.

### IV.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Objection (Docket No. 21) is SUSTAINED in part and OVERRULED in part.  It is further

---

[45] *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

[46] *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (stating that ALJ should have explained why he rejected from restrictions while adopting others).

ORDERED that the Magistrate Judge's Report and Recommendation (Docket No. 20) is ADOPTED IN PART as set forth above. It is further

ORDERED that the ALJ's decision is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the purposes of conducting additional proceedings as set forth herein.

DATED this 18th day of September, 2018.

BY THE COURT:

_____
Ted Stewart
United States District Judge